ELLA DOUTHETT

v.

DANIEL KETTLE.

Filed at Springfield September 28, 1882.

1.  TAXATION—sales of land for taxes—right of redemption—the constitution construed. Sections 4 and 5, of article 9, of the constitution, relating to the sale of lands for taxes, and redemption. therefrom, have no reference whatever to a sale of land upon an execution when a personal judgment has been rendered in an ordinary action to recover delinquent taxes. These sections both relate to sales on judgment against the delinquent lands themselves—a proceeding in rem, and not to a suit in personam against the owner, or party whose duty it is to pay the taxes.

2.  The design of section 4 was to establish throughout the State a uniform system, and require one general officer in each county, and only one, to make sale of delinquent lands, and that, too, upon the order or judgment of a court of record. The judgment required was, no doubt, a judgment in rem—a judgment against the land upon which the taxes had been levied.

3.  The right of redemption provided for in section 5, of the same article, was intended to embrace such sales as were mentioned in section 4, and none others, so that section 5 has no bearing upon a sale of land upon an execution directed to a sheriff, although the judgment was rendered in the case for delinquent taxes.

4.  COUNTY—power to buy lands for taxes. The act of 1879, which authorizes suit to be brought for delinquent taxes in the name of the People, or in the name of the proper county, is broad enough to authorize such county to purchase under the judgment.

5. Judicial sale—*of several distinct parcels together.* Three distinct tracts of land not adjoining each other, one of twenty acres, one of forty, and the other of eight acres, and worth $4000, were levied upon and sold *en masse* for $123. The sheriff at the sale offered each tract separately, and receiving no bids, offered and sold the three pieces together: *Held*, that the sheriff should have offered two of the tracts before offering all together, and that for the error in selling *en masse*, and the inadequacy of the price, the sale could not be upheld.

Appeal from the Circuit Court of Effingham county; the Hon. Thomas S. Casey, Judge, presiding.

This was a bill in chancery, exhibited in the court below by Kettle, against Ella Douthett, Henry B. Kepley, Bernard H. Wernsing, county treasurer, and the county of Effingham, to set aside a sheriff's deed to Ella Douthett, alleged to be a cloud upon complainant's title to certain real estate. The principal cause alleged for setting aside the deed is, that as it was a sale on execution issued on a personal judgment against complainant for taxes on a part of the land sold, the complainant was entitled to two years to redeem from the sale, while under the sale, as made, but fifteen months was given for redemption. Defendants demurred to the bill, and the demurrer being overruled, defendants excepted and stood by the demurrer, and the decree was rendered as prayed. Ella Douthett appealed, and by agreement the case is taken to the Central Grand Division.

Mr. Henry B. Kepley, for the appellant.

Mr. B. F. Kagay, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

It is contended by appellee, that under the constitution of 1870 lands can not be sold for taxes, either on a personal judgment or a judgment *in rem*, except by a general officer to whom a return of unpaid taxes is made; that no sale is valid without two years' redemption is allowed, and that no

title under such sale is good unless notice is given to the owner at the expiration of the time of redemption. This position is predicated upon the construction which appellee places on sections 4 and 5, of article 9, of the constitution. Section 4 provides: "The General Assembly shall provide, in all cases where it may be necessary to sell real estate for the non-payment of taxes or special assessments for State, county, municipal or other purposes, that a return of such unpaid taxes or assessments shall be made to some general officer of the county having authority to receive State and county taxes; and there shall be no sale of said property for any of said taxes or assessments but by said officer, upon the order or judgment of some court of record." Section 5 provides, that the right of redemption from all sales of real estate for the non-payment of taxes or special assessments shall exist in favor of the owner of such real estate for a period of not less than two years.

These two sections of the constitution, in our judgment, have no reference whatever to a sale of land upon an execution where a personal judgment has been rendered in an action brought to recover delinquent taxes. In *Leindecker* v. *The People*, 98 Ill. 21, we had occasion to examine section 4, of article 9, of the constitution, and it is there said: "Prior to the adoption of the present constitution many of the cities and towns had tax collectors of their own, who, under the charters of the cities and towns where they were elected, were authorized to apply for and obtain judgment against delinquent lands, and to sell the same for the non-payment of taxes and assessments levied by the city or town. The purpose of the section of the constitution cited was to obviate this supposed evil, and to prevent a sale of lands by these various officers, and to require a return to be made to some general officer of the county, who shall in all cases, when it becomes necessary, make the sale of delinquent lands for taxes or assessments." The design was to establish through-

out the State a uniform system, and require one general officer in each county, and only one, to make sale of delinquent lands, and that, too, upon the order or judgment of a court of record. The judgment or order required was no doubt such a judgment as the statute then in force authorized,—not a personal judgment, but a judgment *in rem*,—a judgment against the land upon which the taxes had been levied. When this section of the constitution was framed we had no statute authorizing a suit to be brought against a person who had failed to pay his taxes, and the rendition of a personal judgment, and while it may be that a suit at common law might have been maintained for the collection of taxes, the general practice was to proceed against the land.

Much stress has been placed in the argument on the language used in section 5, but this section must be considered in connection with section 4, to determine what was intended. It will not do to take a few lines of a given section of the constitution and undertake to determine the meaning of the instrument from those lines alone. Each part of the instrument must be considered in connection with every other part relating to the same matter. In this way, and only in this manner, can an intelligent judgment be formed as to the intention. The right of redemption provided for in section 5 was intended to embrace such sales as were mentioned in section 4, and none others, and as section 4 had no reference to a personal judgment, but only to a judgment against the land, or an ordinary proceeding to sell lands for the nonpayment of taxes, it follows that section 5 could not have any bearing upon a sale of land upon an execution directed to a sheriff, although the judgment was rendered in the action upon which the execution issued for delinquent taxes.

Again, the land in this case was not sold for the non-payment of taxes, in the ordinary acceptation of that term. It was sold upon a judgment rendered after personal service of summons in an action of debt. Whether the subject matter

of the suit was taxes or a promissory note, can make no difference. The same rule which would control the sale and redemption of the land in the one case would govern in the other.

It is also contended that the county of Effingham had no authority to purchase the lands at the sale under the judgment. We are of opinion that the act of 1879, (Laws of 1879, 239,) which authorizes suit to be brought in the name of the People, or in the name of the county, is broad enough to authorize the county to purchase under the judgment. See, also, sec. 24, chap. 34, of statutes of 1874.

There is, however, one fatal objection to the validity of the sale. It appears, from the allegations of the bill, that the lands sold consisted of three distinct tracts, which did not lie adjoining each other,—one of twenty acres, one of forty acres, and the other containing eight acres; that the three pieces were worth $4000; that the sheriff at the sale offered each tract separately, but receiving no bid, offered and sold the three pieces *en masse* for $123. In *Phelps* v. *Conover*, 25 Ill. 312, the rule was established that where several adjoining tracts of land were levied upon, it was the duty of the sheriff to offer each tract separately, and if no bids were made for one tract add another to it, and so on until all the pieces were offered, and if no bid was made, then sell all the tracts *en masse* for a reasonable bid. This rule was considered and approved in *Morris* v. *Robey*, 73 Ill. 462, and a sale like the one under consideration was expressly condemned. Had two of the tracts been offered for sale together after the sheriff had failed to obtain a bid for one, it is probable a bid might have been made, and thus a sacrifice of the property avoided. At all events the law required the sheriff to pursue the course indicated, and as he failed to do so, and as the property was sold for so small a price in comparison with its true value, the sale can not be upheld.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings consistent with this opinion. The costs in this court will be equally divided between the parties.

*Decree reversed.*