JOHN A. COLLINS v. GEORGE W. PETTITT et als.

(Decided May 9, 1899).

*Tax Sale—Assignee of Certificate of Sale Held by County.*

The decision in *Wilcox* v. *Leach*, 123 N. C., 74, defining the right of an assignee of certificate of sale for taxes held by County to be that of mortgagee, to be enforced by foreclosure, is reaffirmed.

PETITION TO REHEAR this case decided at September Term, 1898.   Reported in 123 N. C., 769.

*Messrs. MacRae & Day; E. L. Travis,* and *Shepherd & Busbee,* for petitioner.

*Mr. Thos. N. Hill* and *Mr. W. A. Dunn,* contra.

*Per curiam:* The petition to rehear is dismissed. We see no reason to change the opinion of this Court delivered in the case at the September Term, 1898.

CLARK, J., delivered dissenting opinion.

FURCHES, J., delivers concurring opinion.

CLARK, J., dissenting. The Courts have no public policy to declare or enforce. This lies outside of their province. It is for the Legislature, the law making power, to define and declare the public policy and when this is clear, whether it may seem a hardship, or beneficial, it is equally the duty of the Courts to declare the law as written. If of doubtful meaning, it is the duty of the Courts to construe it in accord with the settled public policy as deduced from this and similar legislation, or to consider the evil to be remedied, and other like aids, in the endeavor to get at the true meaning of the Act.

The taxing power is essential to the existence of government and justice requires not only that the taxes shall be laid on all "by a uniform rule and *ad valorem*" (Const. Art. V, Section 3), but that they shall be collected from all, for if any property escapes payment of taxes, the property of others, who have already paid their share, must make good the default of those who evade payment. Formerly the holder of a tax deed had to prove the regularity of the many steps leading up to it, with the result as a decision of the Supreme Court stated just before the tax reform Act of 1887 became law, that no tax deed had till then ever been sustained in this Court. As a consequence no one scarcely would purchase at a tax sale and the Counties who bought in

the lands of defaulting taxpayers from year to year in default of other bidders, accumulated large bundles of worthless "tax sale certificates." Fifty years or so ago when the average State tax was nine cents or less on $100, the temptation to any land owner to shirk payment of taxes was small and the default of those who did threw a hardly perceptible increase upon those who paid. But with the addition of the public schools, the Insane Asylum, Institutions for Deaf, Dumb and Blind, the Penitentiary and many other added subjects of expense required by an advancing civilization the aggregate of State and County taxes has run up often to the full limit of taxation (66 2-3c), with frequent recurrence of special taxes in excess of that sum. The increased temptation to avoid taxation, a temptation that was encouraged by a knowledge of the futility of tax sales piled an increasing burden upon good men and swelled the ranks of those who evaded the payment of their just public burdens. The complaint became general, the State Treasurer and the Governor repeatedly recommended a change as imperatively demanded, till finally the Legislature of 1885, Ch. 238, appointed a Commission of three eminent citizens to report a bill for an entirely new system of collecting taxes, the first and indispensable requisite being of course that the purchaser at a tax sale should get a good title. The Commission reported to the Legislature of 1887 their bill which was in most particulars a copy of the law on the subject obtaining in most other States, and whose constitutionality had been sustained by many decisions of their Courts and by the United States Supreme Court, and the change was suggested as valid if it should be made by the opinion of this Court in *Fox v. Stafford,* 90 N. C., 296, at p. 298 (1884). The report of the Tax Commission was adopted—Laws 1887, Ch. 137—and with minor changes is the law today. Its striking feature

was a change of the burden of proof. The old law placed upon the purchaser at a tax sale the burden of proving that all the proceedings were regular, which it was almost impossible for him to do. Under the new law the burden was shifted, and the tax deed was made conclusive evidence of the regularity of matters of routine and presumptive evidence of all other matters. Statutes substantially the same as the new statute had been sustained as above stated in numerous decisions in the States adopting the tax reform and by the United States Supreme Court, many of which are cited in Cooley on Taxation (2nd Ed.), 521, note 1, and since reiterated by the United States Supreme Court down as late as *Castillo v. McComico,* 168 U. S., 674, and *King v. Mullens,* 171 U. S., 404. It is needless, however, to discuss the new statute, which has been sustained by this Court in *Basnight v. Smith,* 112 N. C., 229; *Stanly v. Baird,* (FURCHES, J.), 118 N. C., 75; *Peebles v. Taylor,* (FAIRCLOTH C,. J.), 118 N. C., 165; *Sanders v. Earp,* (MONTGOMERY, J.), 118 N. C., 275; *Moore v. Byrd, Ibid,* 688; *Powell v. Sikes* (MONTGOMERY, J.), 119 N. C., 231; *Lyman v. Hunter,* 123 N. C., 508, and other cases. The radical difference between the two systems is noted by FURCHES, J., in *Worth v. Simmons,* 121 N. C., at p. 361, where he says that in 1887 in the matter of tax titles "the Legislature changed the rule of presumptions. And now it is about as hard to defeat a tax title, as it was before to establish one."

The present is a rehearing of this case decided by a *per curiam,* 123 N. C., 769, upon the authority of *Wilcox v. Leach,* 123 N. C., 74, and therefore in effect is a rehearing as to the grounds of the opinion in the latter case, which went off upon the point that the word "may" in Section 90, Chapter 119, Laws 1895, giving to the County Commissioners the right to foreclose upon a tax certificate, must be

read "shall" or "must." The statute says when the County purchases, the Commissioners "may proceed by action to foreclose such certificates or liens," etc.,—making it plainly optional. The opinion held inadvertently I think (bottom p. 78) the County "must proceed to collect only by foreclosure." I find no warrant for this in the statute, and it is counter to other provisions in the Act and to the public policy of the present legislation on the subject.

In view of the very plainly expressed policy in the statutes which have been almost identical since the first enacted Chapter 237, Laws 1887, and the repeated decisions of this Court upon it, this seems like looking back to the "pit from which we have been digged." Not only the word "may" shows that foreclosure was an optional procedure, but the other provisions of the statute confirm that view.

1. The County is authorized to "purchase" just as any one else. Section 85. It is held that even independent of any expressed provisions of the statute, the Government has the same right to purchase as any one else and, if so, of course it would get exactly the same rights as any other purchaser. *De Treville v. Smalls,* 98 U. S., 517; *Cooley v. O'Connor,* 12 Wallace, 391; *Douthett v. Kettle,* 104 Ill., 356. In the the first of these cases, Mr. Justice Strong speaking of the effect of a purchase by the Government at a tax sale says (p. 522) : "If the United States became the purchaser at the Commissioner's sale it was only to obtain the taxes by a resale, and such a resale, resting as it must have done upon the original sale made by the Commissioners, needed the encouragement and support of a Commissioner's certificate equally with a purchase by a bidder. It is not therefore to be admitted that the statute intended to put the United States in any worse condition than that occupied by any other successful bidder," and adds that the argument to the contrary "is plausi-

ble but unsound." Nor is there the slightest indication in our statute that it was intended to put the County, if it became a purchaser, upon a footing inferior to that "occupied by any other successful bidder." In the same case Mr. Justice Strong further says: "We are not unmindful of the numerous decisions of State Courts which have construed away the plain meaning of statutes providing for the collection of taxes, disregarding the spirit and often the letter of the enactments, until of late years the astuteness of judicial refinement had rendered almost inoperative all legislative provisions for the sale of land for taxes. The consequence was that bidders at tax sales, if obtained at all, were mere speculators. The chances were greatly against their obtaining a title. The least error in the conduct of the sale or in the proceedings preliminary thereto was held to vitiate it, though the tax was clearly due and unpaid." It was to remedy that state of things brought about, as Mr. Justice Strong says, by judicial legislation, with the resultant harship to all honest taxpayers, that the reformed tax system was adopted in this and other States as a sheer necessity for the public treasury, and already astute counsel are besieging the Court to construe away the new statute.

2. Section 85 (Chapter 119, Laws 1895), not only gives the County the same right to purchase as any one else, but authorizes it to receive and assign certificates of purchase. It must be that its assignee stands in the same plight as the assignee from any other purchaser, for the certificate issued to the County is identical with that issued to any other purchaser, and its wording is prescribed in Section 57 and provides, after the recital of sale and purchase, the following, "And I further certify that unless redemption is made of said estate in the manner provided by law, the said (here insert name of purchaser) heirs or *assigns* will be entitled to a deed

therefor on and after the —— day of ——— A. D., 18—,
on surrender of this certificate." When the plaintiff saw in
Section 85 that the County could buy, receive a certificate and
assign it like any one else, and that the certificate (whose
form is prescribed in the statute) provides that on failure of
the tax defaulter to redeem in the time prescribed by law, he
would be "entitled to a deed" he was justified in relying
upon the statute which did not put the County, when pur-
chasing "in any worse condition than that occupied by any
other successful bidder," to use the language of the highest
Court in the land. Though Section 90 does give the County
the option to foreclose, by Section 93 exactly the same privi-
lege is given any other purchaser. Thus throughout the Act
there is not the shadow of a shade of an intimation by the
law making power of any discrimination or intention to dis-
criminate between the County and any other purchaser. Both
are authorized to purchase and to receive and assign the
tax certificate; both receive the same tax certificate drawn
in a form prescribed by statute and which on its face promises
that the purchaser or his assignee shall be entitled to a deed,
if the tax defaulter does not redeem within a year; and to the
County and to the other purchaser alike is given the option
to foreclose if it is preferred to taking a deed.. There is no
indication in the statute of any legislative intention to place
one who buys the tax certificate of one who purchased at the
sale a speculator in a better condition than one who buys the
certificate from the County who purchases at the tax sale
from necessity to save its taxes. A speculator's certificate
ought not to be preferred to that of a County, thus making the
latter unsalable, for who will buy a law suit? The evident
purpose of conferring the privilege of foreclosure is that if
there are tax certificates of prior date outstanding, it might
be desirable, by a foreclosure, a proceeding *in rem,* to give

holders of such other liens opportunity to come in and thus clear the title.

3. It would be a serious discrimination against Counties, which are often the only purchasers, to restrict them to a foreclosure. Frequently the taxes range from $1.00 or less to $20.00, and to require the County to go to an expense probably of $20.00 in each such case, to foreclose, after waiting a year for the taxes, will result simply in exempting all lands not paying large amounts from taxation, unless the owners volunteer to pay, for they know that the County will not spend $20 to collect any except large amounts.

4. This construction would put the County in a worse condition after the sale than before. It has already before the sale a lien and execution, and by this construction, after the purchase, it has only a bare right to bring an action of foreclosure. The County starts in with an execution and winds up with a bare right to bring suit.

The law governing tax sales is as liberal as is consistent with the needs of the public treasury and the duty of every citizen to pay his share of the public burdens. Every taxpayer has the same time in which to pay his taxes. If not paid, and after every reasonable indulgence (which is usually liberal) there is public advertisement and public sale. Even after that, twelve months are allowed in which to redeem the land. And even then, since it might still be possible in some cases that the failure to pay is inadvertent and not intentional, the statute requires that the purchaser shall give the defaulting taxpayer a written or printed notice before applying for his deed. This provision was in the original Act of 1887, Chapter 137, Sections 69 and 82, but having been dropped out for some reason was reinstated in the statute upon the suggestion of this Court made in *Sanders v. Earp,* 118 N. C., 275.

If the power to foreclose is as plainly optional in the simi-
lar statutes of other States as in ours, it is not strange that
the question has not been raised in them, except in one case,
*Otoe County v. Brown,* 16 Neb., 394, 397, as it was not raised
here till last term, though in *Stanly v. Baird,* 118 N. C., 75,
this Court decided for the plaintiff in a case "on all fours"
.with this, he being, like the plaintiff here, the assignee of a
tax certificate from the County. In the Nebraska case, the
Court held that the County instead of taking the tax deed,
might if it chose proceed by foreclosure, and thus cut off all
other tax liens accruing before or after the purchase by the
County.

A cotemporaneous legislative construction is always of
value when the object is to ascertain the legislative will. The
General Assembly of 1899 has put in Section 87 (which is
Section 85 of the Act of 1895) an express provision that the
certificate shall issue to the County in the form prescribed in
Section 57—though that is plainly so under the Act of 1895
which prescribed that form for all purchasers—but the
express provision now is not only a legislative construction,
but was probably intended to cut off future discussion as to
the rights of assignees from a County, as the form there pro-
vided is (as now) a contract that the holder of the certifi-
cate or his assignee "shall be entitled to a deed" if the tax
defaulter does not redeem his land within twelve months.

By the express terms of the law, the defendant is debarred
from contesting the plaintiff's right, for Section 66 provides
that he can not do so unless he first shows that "all taxes
due upon the property have been paid by them, or the per-
sons under whom they claim title." The defendant has not
offered to do this; on the contrary this land has been sold
several times for successive failures to pay. In *Moore v.
Bird,* 118 N. C., 688, this Court said in construing the above

Section: "One who has failed to discharge the lien he owes the State for the taxes due and unpaid on his land, can not complain that the State has transferred to another, who has paid off such incumbrance, its prior lien, and that he can not be heard in the State's Courts, when thus in default, to contradict the title conveyed to the purchaser under such lien."

When the certificate of the former opinion of this Court' went down, the judgment below was entered in accordance therewith, it being first shown to plaintiff's counsel and the costs paid by plaintiff as therein decreed. The defendant contends that this estops the plaintiff from this rehearing. But he could not prevent the judgment being entered below, and could only object if not drawn in accordance with the mandate, for which purpose it was submitted to his inspection. The rule of Court, 53, requires as a condition precedent to a rehearing that the judgment "must be performed or secured." Being only for costs, the petitioner performed it by paying the costs instead of giving security. Instead of being estopped he has only done what the rule of court requires as an indispensable prerequisite to a rehearing.

As the only object of the Courts is to ascertain the legislative will and construe the statute to effectuate it, it would seem that this can only be done by adjudging that the plaintiff, assignee of a County certificate had the same right as an assignee from any other purchaser to take a deed or foreclose at his election, that even if only a mortgagee, he can recover possession from the defendant in that capacity, and that the defendant can not be heard as he does not aver that he has yet paid the taxes.

But if the above conclusions were incorrect and the plaintiff were only entitled to foreclose, all the parties and all the facts are before the Court, and upon all the principles of The Code it was error to render a judgment against the plaintiff

for costs and drive him to a new action for foreclosure, but the foreclosure should be decreed in this action. The plaintiff is "not restricted to his prayer for relief but should be decreed any relief to which the pleadings and facts, proved admitted, show that he is entitled, and even though the plaintiff has misconceived his remedy." *Jones v. Mial*, 79 N. C., 168; *Knight v. Houghtalling*, 85 N. C., 17; *Patrick v. Railroad*, 93 N. C., 422; *Harris v. Sneeden*, 104 N. C., 369; *Barnes v. Barnes, Ibid*, 613; *McNeill v. Hodges*, 105 N. C., 52; *Skinner v. Terry*, 107 N. C., 103; *Johnson v. Loftin*, 111 N. C., 319; *Simmons v. Allison*, 118 N. C., 763; *Adams v. Hayes*, 120 N. C., 383, and there are many others, all to same purport.

FURCHES, J., concurring. This is a petition to rehear and as the opinion in this case is a *per curiam*, based on *Wilcox v. Leach*, 123 N. C., 74, it is in fact a petition to have the opinion in *Wilcox v. Leach* reviewed.

Notwithstanding the severe criticisms made upon the opinion in that case i nthe arguments a tthis term, of probably a half dozen cases, it still seems to me that the opinion in that case is based on sound principles; is a just and proper construction of the statute of 1895, and should be sustained. We were told that this Court can have no policy—that its duty is to construe the law as it finds it and leave matters of policy to the Legislature. I agree with these suggestions. But it is somewhat singular that after these suggestions the greater part of the argument of the petitioner was taken up in discussing the policy to be pursued in collecting taxes to meet the demands of the Government; how difficult it was to collect them before the statute of 1887; how the payment of taxes was evaded; what a burden this was on the honest taxpayers; that this decision was going back to the old policy, and that

the State would not be able, if this opinion stands, to collect its just revenues. And what was equally as striking to me was that we were then told that to remove the doubt this opinion had thrown upon this matter, the Legislature of 1899 had passed an Act providing against this erroneous construction of the Act of 1895. This being so, the matter of public policy contended for, is taken out of the case, and it is reduced to the dignity of an ordinary action, involving the title to land where the plaintiff claims title to 200 or 300 acres of land for which the deed shows he paid less than $20. The plaintiff is entitled to the full benefit, of the law arising out of the transaction and nothing more. He is entitled to nothing for the good of the public. There have been a number of cases similar to this before us, brought on deeds acquired upon certificates of sales by Counties. But not one has come before in which the County is a party. The Counties do not seem to want land; for it would seem that if they are entitled to a deed upon their certificate, as it is contended they are, and this deed gives them the absolute fee simple to the lands, that they would take the lands and sell them for their value, rather than sell their certificates for a pittance.

We are told that *Stanley v. Baird,* 118 N. C., involved the same question that is presented in this case, and it seems that this question was presented by the record in that case; but it was not called to the consideration of the Court nor was it considered in passing on that case, as every member of this Court well remembers.

But as I have said, to my mind the opinion in *Wilcox v. Leach* rests on sound and correct principles. The County Commissioners are not the owners of the lands nor of the taxes due from the defendant; they are simply the agents and trustees of the Counties to whom the taxes are due. To secure the payment of these taxes they have a lien on the lands

124—47

of the delinquent taxpayer in the nature of a mortgage, with a power of sale. At the sale, the auctioneer who can not buy for the trustees nor for the principle debtor, bids the land in and under the statute certifies that fact to the Commissioners. Does this change their relations in the matter? Does it change their trust relations? Are they, by this transaction, the absolute owners of this land in fee simple? According to the clearest principles of law, which it seems to me that no good lawyer will dispute, they are not.

Herein lies the distinction between a third person becoming the purchaser and the Commissioners who simply direct the crier to bid in the land if it does not bring enough to pay the taxes for which it is being sold—that is if it does not pay the mortgage debt.

When *Wilcox v. Leach* was decided at the last term of this Court, it received the approval of every member of this Court, and in my opinion it was correctly decided and should stand.