WALTER LANGLOIS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1904.*

1. PLEADING—*in equity—when supplemental bill is not germane to original bill.* A supplemental bill seeking to remove an alleged obstruction to the enforcement of a judgment *in personam* for taxes, against the owner of land, is not germane to the original bill, which seeks foreclosure of a lien against the land itself for forfeited taxes.

2. SAME—*bill to remove tax deed must allege in what respect it is invalid.* A bill to remove a tax deed as a cloud is defective which merely alleges that the tax deed is invalid, without stating in what respect it is invalid.

3. TAXES—*procedure under section 253 of Revenue act contemplates judgment in rem.* The procedure provided for in sections 4 and 5 of article 9 of the constitution and section 253 of the Revenue act for foreclosing a lien for taxes contemplates a judgment *in rem* against the land itself, a sale by the *ex officio* county collector and a redemption period of two years.

4. SAME—*procedure where judgment for taxes is in personam.* In enforcing a judgment *in personam* for delinquent taxes the sale must be made by the sheriff, and the right of redemption is that fixed by the statute in case of ordinary sales under judgments.

5. EQUITY—*decree cannot rest on general prayer alone.* The relief which may be decreed under a general prayer must be such as the complainant is found to be entitled to under the allegations of fact in the bill and the proof in support thereof.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

The original bill in this case was filed on August 5, 1901, by the People to foreclose liens against real estate forfeited to the State for the non-payment of the taxes of two or more years, by virtue of section 253 of chapter 120 of the Revised Statutes, being the Revenue act. (3 Starr & Curt. Ann. Stat. —2d ed.—p. 3507). The original bill sought to foreclose alleged liens for delinquent taxes on a large number of lots, amounting in the aggregate to 150, and on which it was charged that the taxes sought to be foreclosed amounted to the sum of $3750.00. The bill alleged that the taxes, levied for 1898 and 1899, and the taxes, penalties, interests and costs, which had accrued thereon, remained due and unpaid on said lots, and, as shown in the collector's book, were then a first lien on the property for the several sums set opposite them respectively, and that each of said pieces of land was forfeited to the State for taxes of 1898 and 1899, etc. The bill alleged that Henry N. Cooper, Albert C. McLauchlin, individually, and as trustees of the Shawmut Avenue Land Association, William H. Johnson, Walter Langlois, The Shawmut Avenue Land Association, (a corporation), Otis S. Lyman, David B. Lyman, and the unknown owners of certain tracts of land, had or claimed an interest in said tracts of land as owner or otherwise. The prayer of the bill was, that the defendant owner or owners of the lots should be decreed to pay whatever should be due, and the costs by a short day, and, in default thereof, that the lots, and each of them, should be sold under the order of the court by the county collector as provided by law, etc.

On October 21, 1901, the appellant, Walter Langlois, one of the defendants below, entered his appearance, and on November 8, 1901, filed a general demurrer to the bill. This demurrer does not appear to have been acted upon or disposed of, but on the same day, to-wit, November 8, 1901, the People filed an amended bill to foreclose for the non-

payment of the taxes for 1898, 1899, and 1900, and the tax penalties and costs, etc.; it alleged that the lots were forfeited for the same description for taxes of two or more years, to-wit, 1899 and 1900; it also alleged that the amount of taxes, penalties, interest, etc., due on said tracts of land, forfeited to the State for the years as aforesaid, was for the year 1900, $3750.00, and the full amount then due upon said lots, as shown by collector's books for taxes, penalties, interest, etc., for 1899 and 1900, and accrued taxes levied for 1900, was $3750.00, "which amount was and is a lien upon each of said lots, as shown by collector's books and tax judgment, etc., opposite to each lot separately." (Here follows same description as is in original bill, excepting that two lots are added). The amended bill represented that certain persons, naming, in addition to those mentioned in original bill, Lilla M. Breed, David B. Lyman, trustee, the unknown owners and legal holders of twenty promissory notes for the sum of $1500.00 each, etc., the unknown owners of Lyman's addition to LaGrange, and the unknown owners of the tracts of land therein described, all of whom were made defendants, had or claimed some interest in said lots as owner or otherwise; the amended bill prayed that an account might be taken, and the defendant owners decreed to pay whatever sums should be due upon taking such account, and the costs, and, in default of such payment, that the lots and each of them might be sold under the order of the court as provided by law, etc. General demurrers were filed to the amended bill, but do not appear to have been acted upon or disposed of.

Subsequent to the commencement of this foreclosure suit, and in May, 1902, twenty-nine suits were begun before W. D. Wilcox, a justice of the peace in Cook county by the People against Henry N. Cooper and Albert C. McLauchlin, trustees of the Shawmut Avenue Land Association, as defendants, and twenty-nine judgments were therein entered in favor of the People against said defendants, aggregating $5179.72, upon which executions were issued and returned

by a constable wholly unsatisfied, with a certificate that the defendants had no personal property within the county sufficient to satisfy said judgments. Transcripts were issued by the justice of the peace and lodged with the clerk of the circuit court, together with copies of the summons and process, and the return of the officer, and the judgments thereon, and executions issued thereon, with the returns thereon, and a copy of the docket in each of said cases, and the same were by said clerk recorded and filed with all other papers named by the statute; and thereafter the clerk issued executions upon each of said judgments, records and transcripts, as provided by statute, to the sheriff, which the sheriff levied upon said real estate, and which executions and levies aggregated $5271.88.

On October 25, 1902, the appellee filed an amended and supplemental bill in the foreclosure suit, stating that, during the last five years and in each of them, taxes were assessed and levied upon the lots therein described, and became delinquent, and judgment was rendered thereon in the county court, and thereupon said real estate was in each of said years for taxes, penalties, costs, etc., duly offered for sale at regular tax sale, and for want of bidders was forfeited to the State, and that said taxes and accrued forfeitures, penalties, costs, etc., now aggregate $5271.88, which sum is due and not paid, and a valid first and prior lien upon all said real estate, which was described in the bill. The amended and supplemental bill alleged that the defendants above named, including the appellant, claim some interest in the said real estate subject to the complainant's lien. The amended and supplemental bill also set up the recovery of said judgments before the justice of the peace, and that transcripts were taken from the justice in each of the suits, and lodged with the circuit court, and executions taken out thereon, and placed in the hands of the sheriff, who levied upon all the land described in the original bill as the property of the judgment debtors. The supplemental bill, after setting out all the

proceedings before the justice of the peace and the circuit court in said suits, claimed that there was due the aggregate sum of $5271.88. The amended and supplemental bill also alleged that the title of the said judgment debtors to the said real estate was beclouded and uncertain by reason of divers claims of the defendants, and thereby rendered unsalable by said sheriff; and that the said judgment debtors had no other property from which said executions or any part thereof could be made, and that complainant was without any remedy but in a court of equity. The bill also alleged that all the defendants, except Langlois, Johnson and the village of LaGrange, claim some lien upon the real estate, subject to and dependent upon the title of said judgment debtors thereto, but that said judgment debtors were the real owners of said property; that Langlois, Johnson and the village of LaGrange claimed liens upon said real estate for reimbursement from said judgment debtors for invalid tax titles thereto; that all titles and claims of the defendants were subject to the demand aforesaid, for which said judgments were rendered.

The prayer of the amended and supplemental bill was that the interests of the defendants in the real estate described should be ascertained and declared and decreed to be subordinate and subject to the lien of said taxes, evidenced by said judgments and executions thereon; and that the sheriff of the county be authorized and directed to advertise, sell and convey said real estate under said executions, as in the statute provided, free and clear of all claims, liens, etc., in defendants, except the statutory right of redemption. On November 3, 1902, the appellant filed a special demurrer to the amended and supplemental bill, and also a general demurrer thereto. The village of LaGrange also entered its appearance, and filed a demurrer.

The demurrers to the amended and supplemental bill were overruled. The appellant, Langlois, elected to stand by his demurrer and refused to answer the amended and sup-

plemental bill, which was thereby taken as confessed against him and all the defendants served with process. The cause was thereupon referred to a master in chancery whose report was approved, but is not set out in the record.

On March 25, 1904, the court rendered a final decree, finding that the lots had been forfeited, as stated in the bill, and that there were due for taxes, forfeitures, penalties, interest and costs, in addition to the taxes of 1903, certain amounts, set opposite each lot, aggregating the sum of $5229.99 to which there was to be added in each instance twenty per cent as costs, interests and penalties, making an aggregate sum of $6017.99 due the complainant. The decree also sets up the beginning of the suits before the justice, the rendition of judgments therein, the filing of transcripts with the circuit court, and the issuance of executions thereon, and the levy of the same upon all of the lots described in the bill. The decree then ordered and adjudged that the defendants, within three days, should pay to Hanberg, county treasurer and *ex officio* collector, said sums, aggregating $6017.99, and, in default thereof, that said real estate be sold by said treasurer and *ex officio* collector at public vendue for cash to the highest and best bidder at the east front door of the court house in Cook county, and that the county clerk of Cook county should attend the sale and keep a record thereof, and, on the sale being made, the collector and county clerk should execute and deliver a certificate of purchase to the purchaser or purchasers, signed by the county treasurer and *ex officio* collector and the county clerk, and should record a duplicate in the recorder's office. The decree also provided that, on the expiration of two years from sale, if the premises were not redeemed according to law, defendants should be barred and foreclosed of all right of redemption, and that the county clerk and county collector should execute to the legal holder of the certificate a deed of said premises, and that the grantees in such deed, their legal representatives and assigns, should be let into possession of the premises, etc.

The present appeal is prosecuted from the decree so rendered on March 25, 1904.

GAGE & DEMING, for appellant.

ROBERT S. ISLES, (R. DELOS MARTIN, STILLMAN B. JAMIESON, and A. M. McCONOUGHEY, of counsel,) for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The original and amended bills in this case were filed under and in pursuance of section 253 of the Revenue act. (3 Starr & Curt. Ann. Stat.—2d ed.—p. 3507). That section, after providing that the taxes upon real property, together with all penalties, interest and costs that may accrue thereon, shall be a prior and first lien upon such property superior to all other liens and encumbrances from and including the first day of May of each year in which the taxes are levied until the same are paid, further provides that such "lien may be foreclosed in equity in any court of competent jurisdiction, in the name of the People of the State of Illinois, whenever taxes for two or more years, upon the same description of property, shall have been forfeited to the State, and may be sold under the order of the court by the person having authority to receive State and county taxes, with the same notice to interested parties and right of redemption from said sale as is now provided by law, and in conformity with sections 4 and 5 of article 9, of the constitution of this State." Section 4 of article 9 of the constitution provides as follows: "The General Assembly shall provide, in all cases where it may be necessary to sell real estate for the non-payment of taxes or special assessments for State, county, municipal or other purposes, that a return of such unpaid taxes or assessments shall be made to some general officer of the county, having authority to receive State and county taxes;

212—6

and there shall be no sale of said property for any of said taxes or assessments but by said officer, upon the order or judgment of some court of record." Section 5 of article 9 provides that the right of redemption from all sales of real estate for the non-payment of taxes or special assessments shall exist in favor of the owners of such real estate for a period of not less than two years. (1 Starr & Curt. Ann. Stat.—2d ed.—p. 173).

The prayer of the original and amended bills was that, in default of payment, the property should be sold by the county collector, the officer contemplated by section 253 of the Revenue act, and by sections 4 and 5 of article 9 of the constitution. The original and amended bills were strictly bills for the foreclosure of the lien, provided for in section 253 of the Revenue act, and were proceedings *in rem* against the land itself.

The amended and supplemental bill, subsequently filed, proceeded upon a new and entirely different theory, and, in our opinion, was not germane to the original and amended bills. The supplemental bill set up the recovery of twenty-nine judgments for delinquent taxes against the owners of the property before a justice of the peace, and, after the issuance of executions thereon and the return of the same unsatisfied by a constable, the filing of transcripts in the circuit court, and the issuance of executions, and the levy of the same upon the real estate. The supplemental bill does not state how these levies were disposed of, or that they were disposed of at all. The theory of the supplemental bill is, that the appellant, who is the only one of the defendants below prosecuting this appeal, claimed a lien upon said premises growing out of an invalid tax title thereto, and that his title and claim were subject to the demand, for which said judgments were rendered. The supplemental bill also averred that, by reason of appellant's claim, the property was rendered unsalable by the sheriff; and the object of the bill was to remove the cloud, created by appellant's tax title, in

order that the sheriff might sell the land, levied upon under the executions issued upon the judgments already mentioned. The prayer of the supplemental bill was that the sale of the property should be made by the sheriff subject to the statutory right of redemption.

It is clear that the supplemental bill was an entirely different bill from the original and amended bills. The judgments, rendered before the justice of the peace, were judgments *in personam,* and the object of the supplemental bill was to remove certain clouds or obstacles out of the way, so that the executions, levied under such judgments *in personam,* could be enforced by the sheriff.

In *Douthett* v. *Kettle,* 104 Ill. 356, we held that sections 4 and 5 of article 9 of the constitution had no reference whatever to a sale of land upon an execution where a personal judgment had been rendered in an action brought to recover delinquent taxes. The procedure, provided in sections 4 and 5 of article 9 of the constitution, and in section 253 of the Revenue act, contemplates, not a personal judgment, but a judgment or decree *in rem.* Where the proceeding is to enforce a decree or judgment *in rem,* or against the land itself, the officer, authorized to sell the property, is the treasurer or *ex officio* county collector, and the time of redemption is a period of two years. But where a judgment is against the owner of land for delinquent taxes, which is a judgment *in personam,* the right of redemption is that fixed by the statute in case of ordinary sales under judgments, and the officer, who has authority to make the sale, is the sheriff of the county. In *Douthett* v. *Kettle, supra,* we said (p. 359) : "The right of redemption, provided for in section 5, was intended to embrace such sales as were mentioned in section 4, and none others, and as section 4 had no reference to a personal judgment, but only to a judgment against the land, or an ordinary proceeding to sell lands for the non-payment of taxes, it follows that section 5 could not have any bearing upon a sale of land upon an execution directed to a sheriff,

although the judgment was rendered, in the action upon which the execution issued, for delinquent taxes. Again, the land in this case was not sold for the non-payment of taxes in the ordinary acceptation of that term. It was sold upon a judgment rendered after personal service of summons in an action of debt. Whether the subject matter of the suit was taxes or a promissory note, can make no difference. The same rule, which would control the sale and redemption of the land in the one case, would govern in the other."

It follows from what has been said that the demurrer of the appellant to the amended and supplemental bill should have been sustained. The amended and supplemental bill was not germane to the original and amended bills, because it sought to remove out of the way an alleged obstruction to the enforcement of judgments *in personam* against the owners of the property, and prayed for a sale of the property by the sheriff, and for a deed to the purchaser after the expiration of the statutory period of fifteen months, while the original and amended bill sought to enforce a lien against the land itself, and contemplated a sale of the land by the county collector, and a redemption from the sale by the purchaser within a period of two years, instead of fifteen months. Not only was the relief prayed for by the original and amended bills different from that asked for by the amended and supplemental bill, but the latter bill was defective in another respect. It merely alleged that the tax title of the appellant was invalid, but did not state in what respect such tax deed was invalid. It is incumbent upon the complainant in a bill to remove a tax deed as a cloud upon title to allege and prove the invalidity of the tax deed. (*Hyde* v. *Heath*, 75 Ill. 381; *Gage* v. *Curtis*, 122 id. 520; *Glos* v. *Carlin*, 207 id. 192).

The decree rendered in the case was based upon the allegations of the original and amended bills, and was in pursuance of the relief asked for in those bills. The cause went to hearing before the court upon the amended and supplemental

bill. The original and amended bills had been abandoned by the appellee when the amended and supplemental bill was filed. The relief, granted by the decree, is the relief of foreclosure against the land, enforced by a sale to be made by the county collector, and the decree provided for a redemption of two years. Therefore, the relief, granted by the decree rendered, did not conform either to the allegations or the prayer of the amended and supplemental bill. "The rule is that the complainant must stand or fall by the case he makes in his bill.　\*　\*　\*　And the decree must conform to the prayer of the bill." (*Gage* v. *Curtis,* 122 Ill. 520). It is true that, in the case at bar, the amended and supplemental bill contains a prayer for general relief ; but the relief to be granted under the general prayer must be such relief, as the complainant may be found entitled to have under the allegations of fact made in the bill, and the proof in support thereof. (*Gibbs* v. *Davies,* 168 Ill. 205). In *Fuller* v. *Davis' Sons,* 184 Ill. 505, we said (p. 510) : "Manifestly, the decree of the circuit court cannot be sustained. It is clearly beyond the scope of the bill and the prayer for relief. Neither is it supported by the evidence. The only attempt to justify the finding and decree is under the general prayer. But a general prayer for relief will only sustain a decree when the facts alleged justify such decree. A decree can never rest upon the prayer alone, whether it be for specific or general relief."

We are of the opinion that the amended and supplemental bill was demurrable, and that the decree entered is erroneous, for the reason that it is beyond the scope of the amended and supplemental bill and the prayer of the latter bill for relief.

Accordingly, the decree of the circuit court of Cook county is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.　　　　　　　*Reversed and remanded.*