ALBERT FULLER *et al.*

*v.*

JOHN S. DAVIS' SONS.

*Opinion filed December 18, 1899—Rehearing denied April 6, 1900.*

1. JUDGMENTS AND DECREES—*decree cannot rest solely upon the prayer of the bill.*  A general prayer for relief will only sustain a decree when the facts alleged in the bill justify the same.

2. SAME—*decree beyond scope of bill cannot be sustained.*  A decree clearly beyond the scope of the bill and the prayer for relief can not be sustained.

3. EQUITY—*when relief cannot be granted on account of adequate remedy at law.*  Relief in equity cannot be granted where the wrong of the defendant consists in converting property to his own use, after seizing it under a chattel mortgage on condition broken, without complying with the terms of the foreclosure, since he thereby becomes liable in an action at law to the complainant for its value.

4. SUBROGATION—*when doctrine of subrogation has no application.*  The doctrine of subrogation has no application where there is no relation of principal and surety, guarantors, or other relation which would entitle one party to succeed to the rights of another.

*John S. Davis' Sons* v. *Fuller*, 84 Ill. App. 295, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

This was a bill in equity filed in the circuit court of McLean county, the parties complainant therein being Albert Fuller and John Lantz, for the use of Albert Fuller, and against appellee, seeking to set aside a chattel mortgage sale by the defendant, for an accounting, and to subrogate said Albert Fuller to the rights of the defendant under the chattel mortgage. On answer filed, and replication, the cause was referred to the master to report the evidence, with his conclusions of fact and law. His finding being in favor of the complainants, objections thereto overruled, and the same denied when renewed as exceptions to his report, a money decree was rendered

in complainants' favor for $1136.49. On appeal to the Appellate Court that decree was reversed and the cause remanded to the circuit court, with directions to dismiss the bill. To reverse that judgment this writ of error has been sued out.

The amended bill, on which the hearing was had, sets up the following facts: That on the 20th day of July, 1895, Albert Fuller, John Lantz and J. S. Crawford, as partners, purchased of the defendant company a threshing outfit for $1640, giving their notes therefor, as follows: one for $600, due November 1, 1895; one for $400, due November 1, 1896; one for $400, due November 1, 1897, and one for $200, due November 1, 1898, each bearing eight per cent per annum interest, payable on January 1 of each year, these notes being secured by chattel mortgage on the threshing outfit and other property belonging to the purchasers; that Crawford was afterward released from all liability on said indebtedness by paying $90 on the first note of $600; that Lantz also paid $76 on that note, and that complainant Fuller paid the balance thereof; that September 25, 1896, by agreement of the defendant and the then owners of the threshing outfit, (Fuller and Lantz,) it was sold and delivered to G. W. Reed and A. C. Zimmerman for $1250, for which notes were given by the purchasers, as follows: One for $400, due September 25, 1897; one for $200, due September 25, 1898; one for $50, due March 20, 1897; one for $75, due June 20, 1897; one for $75, due September 20, 1897; one for $240, due September 1, 1898, and one for $210, due November 1, 1898, all bearing interest at the rate of eight per cent per annum, payable annually, the first two of these notes being signed by G. W. Reed, A. C. Zimmerman and two sureties, and made payable and delivered to the John S. Davis' Sons Company, and endorsed as collateral security for the said notes given by Fuller, Lantz and Crawford to the company in the purchase of the machine, and the last five of the notes being signed by George W. Reed

and A. C. Zimmerman and made payable to and delivered to Albert Fuller; that to secure the payment of the first two notes the defendant took a chattel mortgage on one span of mules, one span of horses and two wagons, property of Reed & Zimmerman, and to secure the payment of the five notes payable to Fuller it took a chattel mortgage on the threshing outfit, also executed by Reed & Zimmerman; that after this sale the defendant sued Fuller in attachment, in the circuit court of McLean county, upon the last three notes first above mentioned, but afterwards withdrew the $200 note and took judgment upon the other two, and thereafter bid in the attached property for the full amount of the judgment and costs. The bill then alleges that Fuller tendered to the defendant the full amount of said $200 note, together with interest, which tendered money the defendant refused to accept.

On these allegations of fact it is averred: "That on making the tender, as above set forth, he was entitled to be subrogated to all of the rights of said company to and in the notes and mortgages given by said partners, Lantz & Fuller, as aforesaid, and was entitled to be subrogated to all rights of said company to and in the notes and mortgages given by George W. Reed, A. C. Zimmerman, Jack Zimmerman and Grafton Zimmerman, endorsed as collateral security for said partnership notes, as aforesaid, and was entitled to be subrogated to all the rights of said company to and in the chattel mortgage covering one span mules, one span horses, two wagons, and given by George W. Reed and A. C. Zimmerman aforesaid. Orator avers that he tendered said money and demanded the delivery of aforesaid securities, and that the company refused to refund the money or to deliver the securities; that the defendant company has, since the tendering of the money, collected large sums of money from said Reed & Zimmerman on both notes, the amount being unknown, but which orator avers is equal to and perhaps greater than the amount due on the $200 note signed by your

orator. Orator shows that he is entitled to an accounting as to the amount of money the company has collected from Reed & Zimmerman, and as to what, if any, money was collected from Lantz & Crawford. Orator further shows that after taking judgment in suit in attachment before mentioned, after the tendering of the money before mentioned, the defendant company appeared in the county of Adair and State of Missouri, where said engine and threshing outfit were located, and, while same was in the possession of said George W. Reed and A. C. Zimmerman, fraudulently pretended to make a sale under the chattel mortgage that had been signed by your orator, Lantz & Crawford, as aforesaid, which sale your orator avers was without authority or due notice and was not according to law; and orator avers that at said illegal sale the property in question was fraudulently bid off by defendant company for less than one-sixth of its fair cash value, and said company then made no effort to take possession of the same but went away, leaving it in possession of said Reed & Zimmerman. Orator further shows that if said illegal sale is allowed to stand he will be defrauded of his rights to be subrogated as before prayed for, and the chattel mortgage and notes given, to the amount of $650, given him by Reed & Zimmerman, as aforesaid, will be invalidated."

The prayer is "that the John S. Davis' Sons Company may be required to make full and complete answer, but not under oath, and that the pretended sale of the threshing outfit by defendant to itself may be set aside and declared null and void; that an accounting by and under the direction of said court be had as to the amount of money received by defendant from either Lantz, Crawford, Reed or any of the Zimmermans, as aforesaid; that said defendant be required to accept from your orator whatever amount is so found to be due, and be required to deliver up any and all of said notes and mortgages given by Lantz, Crawford, Reed or the Zimmermans; that your orator may

be subrogated to any and all rights of defendant company in or to said notes and mortgages; that orator may have such other and further relief in the premises as equity may require and to your honor shall seem meet."

The defendant answered that as to part of the relief prayed there is an adequate remedy at law; denied the tender of the money on the $200 note and that the defendant refused to accept it and denied that the complainants were entitled to an accounting; admitted the sale of the threshing machine outfit under its mortgage, but alleged that it was done according to law, and that it had a right to do so; denied that the complainants are entitled to the relief, or any part thereof, prayed in the bill.

The master found the facts as to the original purchase of the machine, sale to Reed & Zimmerman, and the giving of their notes and security, substantially as alleged in the bill; also, that by payment and sale of complainants' property all of the notes given by Fuller, Lantz and Crawford were paid or discharged, except the fourth of those notes, for $200, due November 1, 1898. He then makes the following finding: That on July 16, 1897, the said defendant, claiming a default in the conditions of the said chattel mortgage given by the said Fuller, Lantz and Crawford, advertised and sold the said separator and belt for $75, the said stacker for $10, and the said engine for either $150 or $175; that said property at said sale was sold to G. L. Osborn, the attorney and agent of defendant, and that immediately thereafter said property was sold on time to said Reed & Zimmerman for the sum of $600, and the notes for the same were made payable to said defendant; that the said sale was not fairly made; that the property was sold at an inadequate price, and that the defendant, under the law and circumstances of said sale, was not authorized to purchase at its own sale; that said defendant, about the time it made the said mortgage sale, without the consent of the complainants turned over to the said Reed & Zimmerman said notes

for $400 and $200, respectively, which had been given it on September 25, 1896, as collateral security for the notes that Fuller, Lantz and Crawford had given the defendant, which said notes were given as a part of the consideration of the sale of the said threshing outfit when the same were sold and turned over to it by said Fuller, Lantz and Crawford; that in equity the said notes were the property of said Fuller & Lantz, and should not have been turned over to said Reed & Zimmerman without the consent of the said Fuller & Lantz; that on account of the said mortgage sale of the said threshing outfit by defendant the consideration for the said notes given by said Reed & Zimmerman when the said threshing outfit was sold and turned over to them by the said Fuller, Lantz and Crawford, has failed, and that said notes can not be collected from said Reed & Zimmerman; that said defendant should be required to pay complainants the sum of $1250 and interest thereon,—the amount that was agreed to be paid by said Reed & Zimmerman for said threshing outfit,—less the $200 note, with interest thereon. He states the account between the parties, allowing the full sum to be paid by said Reed & Zimmerman for the machine, $1250, with $141.28 interest, making a total of $1391.28, and charging him with the fourth or $200 note above mentioned, and interest on the same, $54.79, making a total of $254.79, leaving a balance of $1136.49, for which he recommended and the court entered its decree, with costs of suit.

CHARLES M. PIERCE, for plaintiffs in error.

BARR & POLLOCK, for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The extended briefs and arguments of counsel on either side seem to proceed with but little reference to the issues made by the bill and answer. Manifestly, the decree of the circuit court cannot be sustained. It is

clearly beyond the scope of the bill and the prayer for relief. Neither is it supported by the evidence. The only attempt to justify the finding and decree is under the general prayer. But a general prayer for relief will only sustain a decree when the facts alleged justify such decree. A decree can never rest upon the prayer alone, whether it be for specific or general relief. There are no sufficient allegations in this bill for an accounting, and certainly none that would justify the one stated by the master. All that is said in the bill on that subject is: "Orator shows that he is entitled to an accounting *as to the amount of money the company has collected from Reed & Zimmerman, and as to what, if any, money was collected from Lantz & Crawford.*" There is no claim anywhere in the bill that by reason of the wrongful sale in Missouri the complainants will lose the whole amount due on the Reed & Zimmerman notes. On the contrary, the allegation is: "Orator further shows that if said illegal sale is allowed to stand he will be defrauded of his rights to be subrogated as before prayed for, and the chattel mortgage and notes given to the amount of $650, given him by Reed & Zimmerman, as aforesaid, will be invalidated." And again, the master finds the defendant liable for the whole amount of the Reed & Zimmerman notes, $1250 and interest, upon the conclusion "that on account of the said mortgage sale of the said threshing outfit by the defendant the consideration for the said notes given by said Reed & Zimmerman when the threshing outfit was sold and turned over to them by the said Fuller, Lantz and Crawford has failed, and that said notes cannot be collected from said Reed & Zimmerman." Reed & Zimmerman are not parties to this action. It is not shown by either the bill or proofs that they are claiming any such defense against the notes, nor can it be seen from the evidence, or even the findings of the master, that they could successfully plead a total failure of consideration to the notes, especially the five held by the complainants.

That the Appellate Court properly reversed the decree of the circuit court is too clear to be seriously denied. Did it err in its directions to the circuit court to dismiss the bill? We think not. In reaching this conclusion we attach no importance to the point made by the defendant in error as to the fraudulent service of process, and that Lantz is a party in interest,—though as to this last contention we are unable to see why this suit in equity is brought for the use, etc. The amended bill was demurrable in that, attempting to allege irregularity and fraud in the chattel sale in Missouri, it states conclusions without averring the facts. But the insuperable objection to the relief sought on the bill and proofs is, if all that is claimed be admitted, the remedy at law is complete.

Complainants' cause of action, if any, must arise from the conduct of the defendant in relation to the foreclosure sale in Missouri, on July 16, 1897. Admitting that the evidence justified the finding of the master as to that transaction, the mortgage was at the time subject to foreclosure on the $200 note for the non-payment of the interest thereon as it fell due. There is no finding that any tender of payment of that note was made, nor is there sufficient proof to sustain that allegation. Notices of the sale were duly given, and there is no finding to the contrary. The property was bid in for $250, which was about the amount due on the $200 note, with expenses of sale. The wrong of the defendant, as found by the master, was in not making a fair sale, bidding in the property at an inadequate price and purchasing at its own sale, and, without the consent of the complainants, turning over to Reed & Zimmerman the $400 and $200 notes held as collaterals. In other words, what the defendant did in violation of the complainants' right was in (after seizing the property under the mortgage, on condition broken,) misapplying it or converting it to its own use without complying with the requirements for its fore-

closure, whereby it became liable to the complainants for its value. For any such liability they had a complete and adequate remedy at law. (*Waite* v. *Dennison*, 51 Ill. 319.) "Where a court of law is competent to afford an adequate and ample remedy, courts of equity will remit the parties to the courts of law, where the right of trial by jury is secured to them. In such cases either party has a right to demand that the matter of the defendant's liability be submitted to a jury according to the course of the common law, and unless some special and substantial ground of equity jurisdiction be alleged, and, if necessary, proved, such as that a lien exists for the money demand which cannot be adequately enforced at law, or that discovery is necessary to a recovery by complainant, or other like equitable considerations affecting the adequacy of the remedy at law, courts of equity will decline to interfere." *County of Cook* v. *Davis*, 143 Ill. 151, and authorities.

The doctrine of subrogation, on the allegation of facts in this bill, can have no proper application. There is no relation of principal and surety, guarantors, or other relation between the parties, which would entitle the complainants to succeed to any rights of the defendant. The definition and general principles of the doctrine are given in 24 American and English Encyclopedia of Law, (1st ed. p. 187,) as follows: "Subrogation is the substitution of another person in the place of a creditor or claimant to whose rights he succeeds in relation to the debt or claim asserted, which has been paid by him not voluntarily, and contemplates some original privilege on the part of him to whose place substitution is claimed." Mr. Bispham, in his work on the principles of Equity, (sec. 335,) says: "Subrogation is the equity by which a person who is secondarily liable for a debt, and has paid the same, is put in the place of the creditor so as to entitle him to make use of all the securities and remedies possessed by the creditor, in order to enforce the right

of exoneration as against the principal debtor, or of contribution against others who are liable in the same rank with himself." See, also, *Bishop* v. *O'Conner*, 69 Ill. 431; *Home Savings Bank* v. *Bierstadt*, 168 id. 618.

We are of the opinion that in any view of this case the complainants below mistook their remedy, and that the Appellate Court properly directed the dismissal of their bill. Its judgment will accordingly be affirmed.

*Judgment affirmed.*