## Frederick H. Wachsmuth et al., Executors, Petitioners, Appellants, v. Penn Mutual Life Insurance Company et al., Respondents, Appellees.

### Gen. No. 14,326.

1.  TRUST DEEDS—*rights of priority.* A trust deed given by a decedent in his lifetime is given precedence with respect to the original holders thereof and those entitled to subrogation thereto, over the claims of creditors of such deceased seeking to sell such real estate to pay his debts.

2.  SUBROGATION—*who not entitled to.* One who advances money to pay the debt of another, in the absence of an express or implied agreement for subrogation, will not be entitled to succeed to the rights and remedies of the creditor so paid unless there is some obligation, interest or right, legal or equitable, on the part of such person in respect of the matter concerning which the advance is made, as otherwise he is a stranger, a volunteer, an intermeddler to whom the equitable right of subrogation is not accorded.

3.  RES JUDICATA—*what essential to defense of.* To be *res judicata* a controversy must be one which could in the prior proceeding have been litigated.

4.  RES JUDICATA—*when Probate Court not bound by.* Even though the Superior Court of Cook county or the Circuit Court may in a collateral suit have gone into the matters respecting the administration of a deceased's estate, yet a judgment or decree rendered therein will not be held to have barred or disposed of the matters pending in the Probate Court.

5.  RES JUDICATA—*what does not bar right in creditors to have real estate of a deceased's estate sold to pay debts.* A decree rendered in a foreclosure proceeding brought upon a deed of trust executed by the executors of a deceased's estate to which the executors have been made parties and in which they have not represented or answered on behalf of the creditors of such estate, will not operate as *res judicata* against such creditors in a proceeding caused to be instituted by them in the Probate Court for the purpose of subjecting to sale the real estate so foreclosed for the purpose of paying their debts.

6.  LACHES—*when does not constitute defense to action of executor to sell deceased's estate to pay debts.* A proceeding instituted in the Probate Court to subject a deceased's real estate to the payment of the debts of creditors brought within nine months from the time of the expiration of the time for the filing of claims, is diligently brought and the defense of laches will not lie.

7.  GIFTS—*what not valid.* Statements made by a father to his son as follows: "I have canceled this debt," and "You are having

trouble and I will help you out; I will give you that" (referring to a debt) *held*, ineffective either as an executory contract or as a gift *inter vivos*.

8. EXECUTORS AND ADMINISTRATORS—*when chargeable with debt as cash assets.* If an executor is at the time of the issuance of letters indebted to the estate of his testator and is at such time solvent, such debt is to be treated as cash assets in his hands belonging to the estate; if, however, such executor is at such time insolvent, the debt is not to be so treated. Insolvency being shown at the time of the issuance of the letters testamentary, it will be presumed to exist until the contrary condition is established by evidence.

9. EXECUTORS AND ADMINISTRATORS—*when executor not insolvent.* For the purpose of determining whether an executor at the time of the issuance of letters testamentary is solvent so that he may be charged with a debt due to his testator as cash assets, a device to him of an equity in real estate which is stipulated to have been of a certain value, will be considered by the court as of that value in determining whether or not he was at that time solvent, although it was afterwards lost by the foreclosure of the encumbrance. BROWN, J., dissenting.

Petition for sale of real estate. Appeal from the Probate Court of Cook County; the Hon. CHARLES S. CUTTING, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed March 22, 1909.

**Statement by the Court.** This is an appeal from an order of the Probate Court of Cook county, entered June 22, 1907, dismissing a petition filed in said court on the seventh day of April, A. D. 1906, by the executors of the will of Henry F. Wachsmuth (and afterwards amended), for an order of sale authorizing and directing them to sell three pieces of land described in the said petition, or such part thereof as might be necessary to pay debts due from the estate of said Henry F. Wachsmuth. The petition (as originally filed) set up the issuance of letters testamentary to the petitioners on December 12, 1900, and the filing and approving of an inventory and appraisement in said estate, and of a just and true account of the personal estate and debts of the deceased; this just and true account being filed and approved on December 12, 1905.

This account showed the total amount of the indebtedness of the estate to be $12,850.33, and the total personal property to be $5,595.08, making a deficiency of $7,254.25. The petition proceeded to show that the executors had paid on account of the expenses of the settlement of the estate and the indebtedness, $3,957.69, and had on hand $1,637.46. It described the three pieces of real estate of which Henry F. Wachsmuth died seized.

Piece No. 1 was the west 112 1/2 feet of lot 4 in the County Clerk's Subdivision of lots 11-12-13-14 in block 3, in Ellis West Addition to Chicago, subject to a trust deed to Nathaniel A. Mayer, dated October 16, 1896, and recorded October 17, 1896, given to secure the note of Henry F. Wachsmuth for $10,000, maturing October 16, 1901; said trust deed having been foreclosed and Nathaniel A. Mayer being the holder of the certificate of sale.

Piece No. 2 was lots 22 and 23 in block 2 in the Circuit Court partition of the southeast quarter of section 3, township 38 north, range 14, etc., in Chicago, known as 461 and 463 East Forty-seventh street. At the time of the death of said Henry F. Wachsmuth said property was subject to a trust deed made by said Henry F. Wachsmuth to Edgar M. Snow, dated April 15, 1896, and recorded April 17, 1896, given to secure the note of Henry F. Wachsmuth for $11,000, but since the death of the said Henry F. Wachsmuth said trust deed had been released and said note cancelled and the Penn Mutual Life Insurance Company, Bernard Baumgarden and Henry F. West, trustee, claim to have some interest and title to said premises.

Piece No. 3 was lot 18 in the North Tier of Oakenwald, being a subdivision of the northeast fractional quarter of section 34, township 39 north, range 14 E. of the 3rd P. M., in Chicago, known as No. 7 Groveland Park, subject to a mortgage made to the Mutual Benefit Life Insurance Company of Newark, New Jersey, dated December 1, 1898, and recorded December 9, 1898 (which said mortgage was assigned by the

said Insurance Company to James R. Chapman, by assignment dated March 5, 1904), for $4,500; and also subject to a trust deed made by said Henry F. Wachsmuth to the American Trust & Savings Bank, dated March 14, 1899, and recorded March 15, 1899, for $10,000.

Each of these three pieces was alleged by the petition to be improved; pieces 1 and 2 with brick buildings, and piece 3 with a frame residence.

The petition further alleged that Henry F. Wachsmuth left him surviving no widow, but left Frederick H. Wachsmuth and Louis C. Wachsmuth, his sons, his only children and heirs at law, and that they, together with one Helen G. Wachsmuth, a minor, and Helen A. Green, were the only devisees or legatees.

These persons and the Penn Mutual Life Insurance Company, Bernard Baumgarden, Henry F. West, James R. Chapman, the American Trust & Savings Bank, Nathaniel A. Mayer and also various other named parties, were declared by the petition to have or claim some interest in the premises, and were made parties defendant thereto.

June 14, 1906, the Penn Mutual Life Insurance Company filed individually and separately both an answer and a plea to the petition. The answer admits that Henry F. Wachsmuth died, leaving a will which has been probated, and that petitioners are executors, but admits nothing else, and denies that there are any legal or valid claims against said estate in excess of the personal property left by deceased, subject to the payment of his debts. It then alleges that on September 20, 1905, one Michael H. Hoey was the owner and in possession of lots 22 and 23 in block 2, in the Circuit Court Partition, etc. (461 and 463 East Forty-seventh street), and then made to the Penn Mutual Life Insurance Company his promissory notes aggregating $15,000, and executed to Harry F. West as trustee his trust deed on those premises to secure said notes, and that said notes are owned by the Penn

Mutual Co. and are unpaid and a first lien on said premises prior to any supposed right of the petitioners to sell the same to pay the debts of Henry F. Wachsmuth.

The plea "defends the petition" to sell land "so far as said petition is made to apply" to said Forty-seventh street property, and alleges that Henry F. Wachsmuth by his will devised to Louis C. Wachsmuth that property, and that on February 25, 1901, when fully seized of it, Louis C. Wachsmuth made a note for $15,000 to his own order and by him indorsed, payable five years from date, of which note the defendant the Penn Mutual Life Insurance Company became the owner, and also, with his wife, made a trust deed of the said premises to Francis B. Peabody as trustee, to secure the said note; that on January 31, 1903, more than two years after letters of executorship issued to the petitioners and after the filing and allowance of all claims in the Probate Court for which the alleged deficiency of personal property to pay debts arises, the Penn Mutual Life Insurance Company filed its bill of foreclosure in the Superior Court of Cook county against Louis C. Wachsmuth and wife and against L. C. Wachsmuth and Frederick H. Wachsmuth as executors, to foreclose this trust deed, alleging default in the conditions of the same; that Louis H. Wachsmuth and Frederick H. Wachsmuth, executors of Henry F. Wachsmuth, were made parties defendant to said bill under an allegation that they had or claimed to have some interest in said premises or some part thereof, as purchasers or otherwise, but that said interest, if any, was subject to the lien of said trust deed and inferior thereto; that the executors aforesaid were duly served with summons on said bill; that Frederick H. Wachsmuth, executor, was defaulted and the bill taken as confessed against him, and against some other defendants, and that the bill came on to be heard on such default and confession and on the answer of Louis

C. Wachsmuth, both individually and as executor, and upon the report of the master; that a decree was entered by the Superior Court that the Penn Mutual Life Insurance Company had a first lien on the premises mentioned in said trust deed for the amount of said note and other indebtedness, and that unless the amount of $16,125.89 should be paid within a day fixed by the court, the premises should be sold, and that unless redemption was made within the time fixed by law, the defendants to the bill of complaint, including the executors, should be forever barred from all right of redemption from said sale; that payment was not made within the time allowed, and that after advertisement a master in chancery, on July 17, 1903, sold the said property to the defendant, the Penn Mutual Life Insurance Company, for the sum of $17,004.75, and on the same day delivered to said company a certificate of sale; that the sale was approved by the court; that no redemption was made from said sale, and on October 20, 1904, the master made a deed of said premises to the Penn Mutual Life Insurance Company, by which deed the said company became possessed of the title to the premises in said trust deed in fee simple, free and clear of the right of the executors to sell the same or any part thereof to pay the debts of said Henry F. Wachsmuth, deceased; that at the time of the entry of the decree the Superior Court had jurisdiction of the subject-matter and the parties, including said executors, and that by virtue of said sale and master's deed said executors and their successors were and are forever foreclosed and estopped from asserting any title or lien on the premises sold, and from asserting any right to a decree of sale for the payment of debts exhibited in the Probate Court prior to the filing of the bill of foreclosure.

(An "amendment" to this plea was filed December 15, 1906, which consisted merely of a copy of the decree in foreclosure to be appended thereto.)

On June 14, 1906, Bernard Baumgarden, who was

made a defendant to the petition to sell, also filed an answer. In it he denies that the petitioners have fully accounted for the estate, or that there are valid claims against said estate in excess of the personal property left by the deceased subject to the payment of debts; denies that a valid foreclosure has been made of the Ellis West Addition property (piece No. 1), and denies that the Groveland avenue property (piece No. 3) is incumbered as alleged, and alleges that Henry F. Wachsmuth devised to Louis C. Wachsmuth the Forty-seventh street property (piece No. 2) subject to such encumbrance as might be thereon at his death, and gave to Frederick H. Wachsmuth the Ellis West Addition property (piece No. 1), and gave the rest and residue of the real estate and personal property to Louis C. Wachsmuth and Frederick H. Wachsmuth, share and share alike; that said will gave the petitioners as executors full power to sell or encumber any of said real estate; that Henry F. Wachsmuth was in his lifetime and on April 15, 1906, indebted on his promissory note for $11,000, and to secure the same made his trust deed, conveying the Forty-seventh street property (piece No. 2) to Edgar M. Snow as trustee; that said trust deed and note were in full force when Henry F. Wachsmuth died; that on February 25, 1901, there was due upon said trust deed and note the sum of $15,000, and said Frederick H. Wachsmuth and Louis C. Wachsmuth, or one of them, applied to Peabody, Houghteling & Co., a firm engaged in money-lending, for a loan on the premises, to take up the amount due on the Edgar M. Snow trust deed, and then represented to Peabody, Houghteling & Company that there was no indebtedness against the estate of Henry F. Wachsmuth, deceased, which could be filed or allowed, which would subject the real estate to sale for payment of debts, and that they desired to make a loan of $15,000 with which to pay and discharge the $11,000 encumbrance aforesaid, with taxes, interest and special assessments, which were a valid

lien upon said premises; that relying on these repre-
sentations and to enable the petitioners to pay said
$11,000 encumbrance on the Snow trust deed and
taxes on the same, and to have said Snow trust deed
released and discharged, Peabody, Houghteling &
Company on March 1, 1901, advanced the sum of
$15,000, and paid and took up said $11,000 encum-
brance, and procured the release and discharge of the
same; that Louis C. Wachsmuth, devisee under the
will of Henry C. Wachsmuth, executed a note for
$15,000 and gave it to Peabody, Houghteling & Co.
and with his wife executed and delivered a trust deed
to F. B. Peabody, trustee, to secure the said note,
which trust deed was recorded February 25, 1901;
that after the full payment and disbursement of the
said $15,000 loan, and on March 1, 1901, the Penn Mu-
tual Life Insurance Company purchased from Pea-
body, Houghteling & Company said $15,000 note and
trust deed, and became entitled in equity to be subro-
gated to all rights and equities of Peabody, Hough-
teling & Company by reason of advancing the moneys
to pay and discharge the Snow trust deed.   The an-
swer then sets up the foreclosure of the Peabody trust
deed as it is set up in the plea of the Penn Mutual
Life Insurance Company above quoted.   The answer,
however, further alleges that on September 20, 1905,
the Penn Mutual Life Insurance Company, to whom
the master in chancery had conveyed the premises (as
in the said plea recited), conveyed the premises by
warranty deed to Michael H. Hoey, which deed was
recorded in the recorder's office, and that to secure
the deferred payments of part of the purchase money,
Hoey made a trust deed to Harry F. West to secure
three notes of $1,000 each and one for $12,000, which
notes and trust deed are now owned by the Penn Mu-
tual Life Insurance Company; that on December 1,
1905, Hoey and wife made a warranty deed to the
respondent subject only to the trust deed last afore-
said; that the respondent Baumgarden on the same

day took possession of the premises and is now in
possession and control thereof as owner and claims
to be such owner free of any supposed rights of the
petitioners to sell the same to pay the debts of Wachs-
muth, deceased; that said petitioners, by the decree
of sale and conveyance thereunder, are estopped as
executors, from ever attempting to sell the premises,
or any part thereof, to pay the supposed indebtedness
of Wachsmuth, deceased, and have been guilty of such
laches as will prevent them at this time from obtain-
ing an order of sale for the payment of said debts.

Harry F. West, trustee, Mrs. Bernard Baumgarden,
and the Chicago Title & Trust Company, receiver, etc.,
also filed an answer to the petition on June 14, 1906.
It adds nothing to the defenses set up in the answers
and plea heretofore quoted, but alleges that Mrs.
Baumgarden's interest is as wife of Bernard Baum-
garden, and the Chicago Title & Trust Company's is
as receiver of a judgment creditor of Frederick H.
Wachsmuth and Louis C. Wachsmuth. The usual
formal answer of a minor by a guardian *ad litem* was
afterwards filed for Helen J. Wachsmuth. On June
14, 1906, Bernard Baumgarden also filed a cross-peti-
tion, making all the parties to the original petition of
the executors defendants thereto, and setting up in
said cross-petition all the matters contained in his
answer. The cross-petition concludes with the allega-
tions of law that under the facts recited, the execu-
tors of Henry F. Wachsmuth, by the foreclosure de-
cree sale and conveyance thereunder, on the bill of
the Penn Mutual Life Insurance Company, are es-
topped as such executors from ever attempting to sell
said premises or any part thereof to pay the supposed
indebtedness of Henry F. Wachsmuth, deceased, and
have been guilty of laches; that the Superior Court
had jurisdiction of the subject-matter and of the par-
ties, including Frederick H. Wachsmuth and Louis C.
Wachsmuth, executors, and that such executors were
the legal representatives of all persons or claimants

having filed or exhibited their claims for allowance against Wachsmuth, deceased; that the cross-petitioner is vested with all the equities and is subrogated to all the rights of Peabody, Houghteling & Company and said Penn Mutual Life Insurance Company; that it would be inequitable and unjust to attempt to sell the premises upon which Peabody, Houghteling & Company made the loans as aforesaid, and so foreclosed, until all other real estate of the said Henry F. Wachsmuth should be sold and disposed of. It then prays for an accounting of the personal estate of Henry F. Wachsmuth, also for the sale of all the remaining other parts of the real estate, before selling the real estate of cross-petitioner, and that the cross-petitioner be decreed to be entitled in equity to be subrogated to the lien of the Edgar M. Snow trust deed for $11,000.

On February 20, 1907, after argument, an order was entered by the Probate Court, overruling the plea filed by the Penn Mutual Life Insurance Company, to which order the company excepted and, as the record recites, "elected to stand by its plea". The judge of the Probate Court rendered a written opinion in overruling the plea. He held that the answer of the Penn Mutual Life Insurance Company did not, as was claimed by the petitioners, supersede or overrule the plea, which he disposed of on its merits. He held the plea to be purely one of *res adjudicata*. He found that the executors were not necessary parties to the foreclosure decree recited in the plea, and doubted even if they were proper ones. He further found that in any event under the pleadings in the foreclosure suit they were not bound by the finding of the decree that the holder of the Peabody trust deed, the Penn Mutual Life Insurance Company, had a first lien on the premises involved, or otherwise. So holding, he declared it to be "quite unnecessary to determine whether the executors so represented creditors of the estate that such creditors are prevented from assert-

ing their rights by reason of the failure of the executors to present their claims in the foregoing suit.''

After the plea of the Penn Mutual Life Insurance Company was thus overruled, general replications were filed by the petitioners to the various answers of the defendants. Subsequently, an answer of the executors was filed to the cross-petition heretofore described of Baumgarden, and answers of the American Trust & Savings Bank and James R. Chapman, both to the original petition of the executors and to the cross-petition of Baumgarden. In their answer to the cross-petition the executors allege that they are not guilty of laches and that they have used every reasonable effort to procure an order for the sale of said real estate, and deny the right of Peabody, Houghteling & Company, the Penn Mutual Life Insurance Company, or those claiming under them, to subrogation. They deny that the foreclosure proceeding of the Penn Mutual Life Insurance Company in any way barred or foreclosed their right to sell said premises to pay the debts of Wachsmuth, deceased, and allege that they, as executors, have a prior and superior lien on said premises for the purpose of paying said debts. They deny that the Superior Court had jurisdiction of the executors for the purpose of foreclosing and cutting off their rights to sell said premises to pay the debts of said Henry F. Wachsmuth, and deny that the decree and making of said executors parties to said foreclosure suit estopped said executors from selling said premises to pay said debts. They allege that whatever right or title the cross-petitioner has in the property named in the cross-petition is subject and subordinate to the right of the executors so to sell said property. The answers of the American Trust & Savings Bank and Chapman to the petition and cross-petition contain allegations that they are creditors of the deceased, Henry F. Wachsmuth, in the sum of $10,258.33, with interest, less the sum of $3,000, which

has been paid on account of the claim, and deny that any of the defendants have any rights except such as may be subordinate to the rights of the executors to sell the real estate of the deceased for the purpose of supplying the deficiency of the personal property to pay said debts.

General replications were filed to these answers, and the cause was set for hearing. The result of the hearing was an order of the Probate Court, dismissing both the original petition of the executors and the cross-petition of Baumgarden. From so much of the order as dismissed their petition the executors appealed to the Supreme Court, and in that court assigned as error that the decree was contrary to the law and the evidence, that the court erred in admitting improper evidence in behalf of the defendants to the original petition and excluding proper evidence offered in behalf of the petitioners, and erred in dismissing the petition and in not entering a decree in accordance with the petition.

The American Trust & Savings Bank assigned "cross-errors", repeating, however, exactly the allegations of the petitioner's assignment of errors. The Penn Mutual Life Insurance. Company also assigned cross-errors. It alleged that the court erred in sustaining the demurrer to its plea as amended.

Bernard Baumgarden filed cross-errors, alleging that the Probate Court erred in dismissing his cross-petition, instead of granting to him the relief in said cross-petition prayed. The Supreme Court held that the appeal should have been taken to this court, and transferred it here under the statute.

WILLIAM GARNETT, for appellants; MORAN, MAYER & MEYER, of counsel.

CHARLES L. BARTLETT and ASHCRAFT & ASHCRAFT, for appellee; HARRISON B. RILEY, of counsel.

Mr. Justice Brown delivered the opinion of the court.

The questions involved in this appeal seem to be:

First. Were Peabody, Houghteling & Company and their successors in the beneficial ownership of the rights, title and interests which passed under the trust deed of Louis C. Wachsmuth to Francis B. Peabody, dated February 25, 1901, conveying lots 22 and 23 in block 2 in the Circuit Court partition, subrogated to the rights before held by the beneficial owners of the interest in said property which passed by the trust deed from Henry F. Wachsmuth to Edgar M. Snow, dated April 15, 1896? If they were, the petition, of course, could not be sustained against their rights, as it is conceded that an encumbrance or lien placed on property by the decedent would take precedence of any right of the petitioners. So far, at least, as this property was concerned, the petition would have been in that case properly dismissed.

Second. If this theory of subrogation is not correct, did, nevertheless, the foreclosure proceedings begun in the Superior Court by the Penn Mutual Life Insurance Company on January 31, 1903, on said lots, and carried to a decree of the said court June 22, 1903, and a sale and master's certificate and deed thereafter, cut off and foreclose any right that may have theretofore existed in said petitioning executors to sell, or in the creditors of Henry F. Wachsmuth to cause to be sold, the said property to pay Henry F. Waschmuth's debts?

The ground of this claim on the part of appellees is that the executors made defendants in said foreclosure suit (under the allegation that they "had or claimed to have some interest in said premises as purchasers, mortgagees, judgment creditors or otherwise, which interest, if any, had accrued subsequent to the lien of the complainants and was subsequent and inferior thereto"), represented those rights of creditors which had to be worked out through their intervening action,

and that as such representatives and in every other capacity, they were bound by the decree which, taking the bill as confessed by them, found all its material allegations true, and that the Penn Mutual Life Insurance Company had a first and prior lien on said premises; and among other things, adjudged and decreed that if the said premises should not be legally redeemed after the ordered sale, "the defendants in the cause and all persons claiming under them, or either of them, should be forever barred and foreclosed of and from all equity of redemption and claim of, in, and to said premises". If this claim of the appellees is correct, it is also an end of this proceeding so far as they and the property in the Circuit Court partition is concerned.

A third question raised by the pleadings is whether the petitioners have been guilty of laches, forfeiting the right which they claim in their petition..

The fourth question is: Assuming that the petitioners still have, as to all the real estate left by Henry F. Wachsmuth, the right, in a proper case and under a proper showing, to sell to pay the debts of the deceased, is this a proper case and has a proper showing been made?

No question is made as to the procedure proper, but it is claimed by appellees that no showing has been made that there is any deficiency of personal property in the estate of Henry F. Wachsmuth to pay said indebtedness, and that any apparent showing to that effect by the alleged just and true account of the personal property and debts of said deceased filed in the Probate Court is due to the failure of the said executors to show therein certain credit assets of the estate. The assets thus wanting are said to be a certain debt due from themselves to said estate, which, added to the other assets, would increase their aggregate above the amount of the estate's indebtedness. This debt was of $10,000 and accrued interest, and was for money advanced by the deceased, Henry F. Wachs-

muth, to his sons (the executors and petitioners) in March, 1899. The appellees claim that this sum should be held cash assets in the hands of the executors, thereby increasing the amount of assets shown by the "just and true account" from $5,595.08 to $15,595.08, and as much more as the interest amounts to. As the claims allowed only amount to $12,850.33, with this increase in the personal assets, the deficiency for which real estate could be sold, would disappear.

Therefore these two subsidiary questions arise under this fourth primary one:

A. Was the debt of $10,000 and over, from the executors to the estate, in existence at the time of the petition to sell?

B. If it were, was it properly to be held cash assets in the hands of the executors?

The answer to this last query depends on two questions—one of law and one of fact.

The question of law is: Was the debt properly to be so held, even if the executors were personally insolvent at or after the time of their appointment and qualification?

If the answer to this question of law is in the negative, this question of fact must be answered: Were the executors solvent at or after said time?

The Probate Court in its conclusions made the whole matter turn on the answer to this last subdivision of the inquiry. It held that the appellees, the Penn Mutual Life Insurance Company and Baumgarden, were not subrogated to the rights of the holders of the Snow trust deed. It also held that the foreclosure proceeding and decree in favor of the Insurance Company and the sale and deed thereunder did not cut off or foreclose any right which before existed in the executors to sell under their petition. It further held, as we understand the record and the admission of counsel, that the executors were guilty of no laches which so cut off, waived, or foreclosed their right.

It held, moreover, that the proper procedure had been followed if the proper showing had been made and that if the executors were solvent their debt to the estate should be considered as such assets of said estate in their hands, but that if they had been insolvent at, and for all the time after, their appointment and qualification, the debt due from them should not, as a matter of law, be accounted cash assets in their hands.

To this point, therefore, the Probate Court followed the petitioners and the creditors in their claim of a right in this proceeding to sell the land held by Baumgarden.

But it held on the evidence before it, as a matter of fact, that the executors were solvent at and after the time of their appointment and qualification, and that no deficiency existed. The necessary consequence of this holding was the dismissal of the petition, and this order was entered. Thus, as stated, the Probate Court's decision was based on its answer to this last question of fact before set forth.

The cross-errors assigned, however, make it necessary for us to review as well the decisions of the lower court on the preceding questions of law, as on this final one of fact.

The court is undivided in the opinion that on each of the questions of law, the conclusion of the Probate Court was the correct one. Its reasons will be briefly set forth.

The first of these questions is whether the Penn Mutual Life Insurance Company and Baumgarden, through their holding of the Peabody encumbrance, are subrogated to the rights of the holder of the Snow trust deed. As is pointed out by appellants, there was certainly no agreement to that effect when the "Peabody" loan and trust deed were made. The Peabody loan was made as the cross-petition of Baumgarden alleges, to secure money to discharge the Snow encumbrance and, as the evidence of Mr. Houghteling

shows, on the representation that there were no claims
against the estate. If, therefore, the holder of the
Peabody trust deed is entitled to be subrogated to the
rights of the Snow trust deed, it must be by operation
of law and merely because the money which Peabody,
Houghteling & Co. advanced actually went to pay the
Snow encumbrance.

But this in itself does not, according to any au-
thorities of which we are aware, create the right of
subrogation.

Thus Beach on Modern Equity Jurisprudence, sec.
801, says: "But one who is only a volunteer cannot
invoke the aid of subrogation, for such a person can
establish no equity. He must have paid on request or
as surety, or under some compulsion, made necessary
by the adequate protection of his own right. * * *
The loaning of money to discharge a lien does not sub-
rogate the lender to the rights of the lien holder".

The American & English Encyclopedia of Law, Vol.
24, p. 281, says: "One who advances money to pay
the debt of another, in the absence of agreement ex-
press or implied for subrogation, will not be entitled
to succeed to the rights and remedies of the creditor
so paid, unless there is some obligation, interest or
right, legal or equitable, on the part of such person
in respect of the matter concerning which the ad-
vance is made, as otherwise he is a stranger, a volun-
teer, an intermeddler, to whom the equitable right of
subrogation is never accorded".

Both of these text-book propositions are quoted as
correctly stating the law by the Supreme Court of
Illinois in Bouton v. Cameron, 205 Ill. 50. To the
same effect are Fuller v. Davis' Sons, 184 Ill. 505;
Hough v. Aetna Life Ins. Co., 57 Ill. 318; Small v.
Stagg, 95 Ill. 39; Pearce v. Bryant Coal Co., 121 Ill.
597; and White v. Cannon, 125 Ill. 416.

The second question relates to the effect of the
foreclosure proceedings in the Superior Court in case
No. 227982, Penn Mutual Life Insurance Company et

al. v. Louis C. Wachsmuth et al., on the right of the executors of Henry F. Wachsmuth to sell the real estate therein involved for the benefit of the creditors of the estate. This was the question raised by the plea of the Penn Mutual Life Insurance Co. to the petition, which plea was overruled by the Probate Court. Because of the fact that the executors of the deceased, Henry F. Wachsmuth, were made parties to this proceeding to foreclose a trust-deed mortgage given by a devisee under the will of which they were executors, and were by the general language of the decree foreclosed from all claim of, in, and to said premises, on which the complainants were said to have a first lien, it is claimed by the plea of the Insurance Co. and by the cross-petition of Baumgarden, and is claimed in this appeal, that the executors lost by the principle of *res adjudicata* any right they might, before said decree, have had to sustain their petition. The reasoning of the judge of the Probate Court in disposing of the plea seems to us, however, entirely satisfactory.

In the first place, to be *res adjudicata,* a controversy must be one which could in the prior proceeding have been litigated; and it is difficult to understand how the executors of a will could litigate the priority of right between themselves, claiming under and representing the testator, and the assignees of a devisee from that testator. The priority is self-evident and axiomatic in such a case, not a matter for litigation.

But if it were, then the litigation of the priority involved here would necessarily draw with it into the cause, the entire administration of the estate.

This, the appellees say, the Superior Court has jurisdiction to undertake in the exercise of its chancery powers. This may be conceded, but it is nevertheless true that the Supreme Court has in like circumstances held that if the Superior Court or Circuit Court be a possible forum, it is not so the proper forum for

such administration that its determination in a collateral suit will be held to have barred or disposed of the matters pending in the Probate Court which, under this theory of its jurisdiction, might have been, but were not, litigated.

We do not see but that the principle stated, if not involved, in Sutton v. Read, 176 Ill. 70, and Crane v. Stafford, 217 Ill. 21, is applicable to the case at bar.

But further than this we do not think the form of the findings and orders of the decree in the foreclosure case, properly construed, cut off the rights of the executors. The court found that the Peabody trust deed constituted a first and prior lien on the property involved. So it does, for the contingency that the property might have to be sold under a paramount claim did not constitute a lien in the proper sense of that word. Where that expression has been used by the Supreme Court to describe this contingent right of sale to pay a decedent's debts, the question whether there was properly a "lien" existing was not involved, and it was apparently used loosely and without precision.

The enforcement of future and unassessed taxes might possibly take the land out from under this "first and prior" lien, and yet said taxes would not have been a lien at the time the finding was made.

We do not mean to imply that the nature of the right of the executors to sell is identical with that of the contingency of future unpaid assessments, but use the suggestion merely as matter of illustration.

The only other provision in the decree which could affect this right, is that which says that "the defendants in this cause, and all persons claiming under them or either of them shall be forever barred and foreclosed of and from all equity of redemption *and claim of, in and to said premises and every part and parcel thereof which shall have been sold as aforesaid and which shall not have been redeemed according to law"*. These italicized words by a forced construc-

tion might be said in terms to exclude the executors' right (if the executors represented in this litigation the creditors who alone are beneficially interested in that right) to sell to supply a deficiency in the personal assets of the estate; but such is not the natural meaning to be given to the phrase. It is that claim of the defendants "in and to the premises" which is the subject of the sale and of the redemption—in other words, that which was conveyed by the trust deed sought to be foreclosed—from which they are barred and foreclosed. This is the construction which a learned judge in the fourth district evidently placed on this language, holding that in the absence of a more specific allegation than the general one of a claim of interest made in this case, the rights of a prior encumbrancer made defendant was not by them affected when he had made no defense to the bill. Foval v. Benton, 48 Ill. App. 638. This court virtually approved this doctrine in Hibernian Banking Association v. Law, 88 Ill. App. 18. It is the doctrine held in many other jurisdictions, for example, in Vermont—Buzzel v. Still, 63 Vermont, 490; in California—McComb v. Spangler, 71 Cal. 418; in New York—Emigrant Savings Bank v. Goldman, 75 N. Y. 127; and in Wisconsin—Strobe v. Downer, 13 Wis. 11.

We are aware that language used by our Supreme Court in such cases as Kehm v. Mott, 187 Ill. 519, and Rohrhof v. Schmidt, 218 Ill. 585, seems inconsistent with this view; but we are forced to agree with the learned judge of the Probate Court that the language in those cases must be considered as *obiter dictum* save so far as it applies to the precise facts in those cases. In neither of those named was the thing to be decided what was the effect of the general language of a decree on a point not litigated, but in the first it was whether on a point put in direct issue by the pleadings, and thus actually litigated, the allegations of the bill were sufficiently specific; and in the second, whether certain evidence was sufficient to make a

*prima facie* case to establish the allegations of the bill.

To give the language used a wider effect as authority would be to make it contradict in principle the doctrine of Gage v. Perry, 93 Ill. 176.

But we may go further still, and state our opinion on a point left undetermined by the court below, which is in itself conclusive against the bar claimed to have been made by the foreclosure decree. It is this—that the action of executors in enforcing a sale of real estate to supply a deficiency in personal assets to pay debts is in the right of the creditors whose debts are to be paid, while in the character of defendants to the foreclosure bill in this case, the executors did not so represent the creditors of the estate as to have required them to present and have litigated the creditors' claims.

We by no means intend to hold that making the personal representatives of a deceased person parties to a foreclosure suit to foreclose an encumbrance existing at the time of the death of the deceased, does not bar the right of all the creditors of the estate. Undoubtedly it does. But this is a different case, and it seems to us inconsistent with the logic and right reason of the situation, to assume that without an actual day in court, before, it may be, their claims are allowed, creditors who would otherwise have in the probate procedure the right and the means to enforce payment in full against the estate, can be cut off from that right by the neglect of an executor to answer or deny the allegations of a bill brought by a stranger, to foreclose a trust deed subsequent in time to the death of the testator. We do not believe that it is the law that they can.

We see no ground for an affirmative answer to the third question—Were the petitioners guilty of laches? The Probate Court therefore properly answered it in the negative. The time for filing claims against the estate, under the law as it then existed, expired on

December 12, 1902, and as early as August 28, 1903, one of the creditors (in whose right this proceeding is brought and by whose diligence the question of laches should be tested) began its attempts to secure the enforcement of the remedy involved in this cause; and the Supreme Court has said that a much longer time is allowed to enforce this right. Myer et al. v. McDougal, 47 Ill. 278.

As to the first subdivision of the fourth primary question—Was the debt of $10,000 in existence at the time of the petition to sell?—no contention is now made by the appellants. It is conceded that such debt did exist, although at one stage of the proceedings it was claimed that it had been extinguished by the deceased in his lifetime. The executors, Frederick H. Wachsmuth and Louis C. Wachsmuth, were the sons of the deceased, Henry F. Wachsmuth. They were on March 15, 1899, in the wholesale clothing business in Chicago, and at that date their father loaned them $10,000. Louis C. Wachsmuth testified in this proceeding that a short time afterward his father said: "I have cancelled this debt", and, again, "You are having trouble and I will help you out. I will give you that". The Probate Court rightly held that the agreement which this testimony tended to prove would be without consideration and ineffective either as an executory contract or a gift *inter vivos*, and the appellants make no contention to the contrary in this court.

We are thus brought to the question whether the sum of $10,000 and interest should be held cash assets in the hands of the executors. On the propositions of law involved in this question, the parties and the Probate Court are, as we understand it, in substantial accord. At least no strenuous contention is made by either party that the rule which we understand the Probate Court adopted, and which we believe to be the correct one, is not the law of Illinois. It is that executors or administrators are chargeable with a

debt due from them to the estate as cash assets in their hands only when they are solvent. Even if they could show that they were insolvent, they were held so chargeable by the common law and they are so held by what has been denominated the Massachusetts rule. Leland v. Felton, 1 Allen, 531; *In re* Howell, 66 Neb. 575, reported with annotations also in 61 Lawyers Reports Annotated, p. 313.

But because this rule worked injustice and hardship, particularly to the bondsmen of insolvent personal representatives, the courts, as is said in Sanders v. Dodge, 140 Mich. 236, have "modified this rule somewhat". The opinion in that case quotes from Dame on Probate and Administration with approval the following: "It is a well established rule of law, running back even before the Revolution, that an executor or administrator is considered as having paid the debt due from him to the estate and as actually having in his possession that much more cash. If the personal representative is insolvent, the courts, in the interests of all concerned, modify this rule somewhat. He still charges himself with the amount of his debt, but it does not make it actually money. The law does not require impossibilities, and there is no more reason why he should be considered as having paid what he was utterly unable to pay than any other creditor. He is held liable to the estate to the extent of his ability to pay the same at any time during administration".

This doctrine is approved in *In re* Walker, 125 Cal. 243; in Lyon v. Osgood, 58 Vermont, 707; in *In re* Georgi, 47 N. Y. Suppl. 1061; McCarty, Admr., v. Frazer, 62 Mo. 263, and Wilson v. Ruthrauff, 82 Mo. App. 435. The California decision above cited states it on text-book authority to be the law of Indiana, Maine, Wisconsin, New Jersey, New York, Oregon, Pennsylvania, Tennessee and Vermont. We think that it is also the law of Illinois and that the principle is fully recognized in the language of the

opinion of the Appellate Court of the fourth district in May v. Leighty, 36 Ill. App. 17, and of the second district in Phillips v. Duckett, 112 Ill. App. 587.

With these conclusions reached by the undivided court, there only remains for this court, as there did for the Probate Court under the same conditions, as the ultimate query on which the decision of the case must turn, the question of fact: Were Frederick H. Wachsmuth and Louis F. Wachsmuth insolvent on and after the death of Henry F. Wachsmuth on November 2, 1900, up to the hearing of this cause, and the order appealed from which dismissed the petition on June 22, 1907?

Counsel for appellees claim that all the authorities which hold that the insolvency of the executors prevents the indebtedness from being reckoned as cash assets, place upon them the burden of showing their inability to pay; but under the circumstances of this case, it will be, we suppose, conceded that if the insolvency immediately after the death of Henry F. Wachsmuth and at the time of the issuance of the letters testamentary is established, that condition will be presumed to have continued except so far as the evidence in the record shows that it has been changed. That, at all events, is our view, and it is on the assumption of its correctness that we pass on the question at issue.

The Probate Court decided that the evidence did not establish the insolvency of the executors, but, on the contrary, established their solvency at the time of their appointment and qualification, and this court (but not unanimously) has arrived at the same conclusion. The order of the Probate Court will therefore be affirmed.

It is not necessary to discuss at any length the reasons for our differing opinions on this question of fact. Succinctly stated, they are as follows: A year or more before the death of Henry F. Wachsmuth, Louis C. and Frederick H. Wachsmuth, afterwards

the executors, had become financially embarrassed in the wholesale clothing business, which they were conducting. Their father helped them to a settlement, but when he died they were insolvent. They had only $5,000 of assets and twenty-six or twenty-seven thousand dollars of liabilities. After that they continued in business without making any recoupment of their losses, and by the end of 1902 their business was closed out, and they had no assets, but liabilities of from twenty to twenty-five thousand dollars. Judgments were obtained against them and creditors' bills filed on the judgments, apparently without result.

But Henry F. Wachsmuth devised to Louis C. Wachsmuth the Forty-seventh street property (mentioned in the prefixed statement as piece No. 2), subject to an encumbrance of $11,000 and some accrued interest, and to Frederick H. Wachsmuth the Rhodes avenue property (mentioned in the statement as piece No. 1), subject to an encumbrance of $10,000, and the Groveland avenue property (piece No. 3), subject to a first encumbrance of $4,500 and a second one for $10,000, to both Louis C. and Frederick H. "share and share alike". He also gave them, as executors, power to sell or to mortgage all said real estate.

Reckoning, then, that at the time of the death of their father they were even $22,000 worse off than nothing (including the $10,000 debt to their father in the account), yet if these equities in the three pieces of property mentioned were worth that amount, it is the opinion of the majority of this court that they would then have become solvent under the operation of the devises before their appointment and qualification as executors.

The bill of exceptions or certificate of evidence in this case concludes with the following recital:

"It is stipulated by all counsel that at the time of the death of Henry F. Wachsmuth, deceased, the fair market value of the Rhodes avenue property was $30,000, subject to an encumbrance of $10,000, and

that the value of the Forty-seventh street property was $30,000, subject to an encumbrance of $11,000, and of the Groveland Park property $10,000, subject to encumbrances of $4,500 and $10,000, making a total value in real property of $70,000, subject to mortgages made by Henry F. Wachsmuth, deceased, aggregating $35,500''.

It is also the opinion of the majority of the court, which agrees in this with the decision of the Probate Court, that the effect of this stipulation is to show that the equity in the Rhodes avenue property, which Frederick H. Wachsmuth received, must be considered among his assets at the approximate figure of $20,000, and that the equity in the Forty-seventh street property, which Louis C. Wachsmuth received, must be reckoned among his assets at the approximate figure of $19,000. No account need be taken in this calculation of the Groveland avenue property, which was encumbered for more than its value, on which encumbrances, however, the devisees were not personally liable. It is plain, of course, that if this $39,000 is properly to be estimated as a valuable and available holding of the two devisees and executors, it overbalanced their indebtedness by $17,000, and left them solvent and chargeable with the indebtedness to the estate as cash assets. This, it was the decision of the Probate Court and is the decision of this court, it did. Therefore the petition to sell real estate was dismissed by the Probate Court and the order is by this court affirmed.

The writer of this opinion, however, does not agree with this conclusion. His criticism of it is based on the same considerations urged against it in the appellants' brief and argument, and need not be here elaborated. He thinks that under the true meaning of the rule concerning the treatment of a debt from an executor as assets in hand, the debt can only be so considered when the executor could, with the property

in his possession or under his control belonging to him, have paid it.

The equities in real estate involved here were not an available fund. The results have shown it. That "the fair market value" was a certain amount, does not mean that the property could have been at any time sold for that much, subject to encumbrances due or soon coming due, and to the contingencies involved in winding up the estate of the decedent devisor.

Both the Rhodes avenue property and the Forty-seventh street property are now in the hands of other parties through the immediate or mediate effect of the encumbrances which were on them at the time of the testator's death.

The Rhodes avenue property was foreclosed under such an encumbrance, and the Forty-seventh street property on one which was substituted for such an encumbrance, and from the proceeds of which the original encumbrance was paid.

But as this is not the view of the majority of the court and on all the other points in the case we are agreed, the judgment of the Probate Court is affirmed.

*Affirmed.*